UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

### CASE NO.: 23-14050-A

| | |
|---|---|
| LORENZO ESTEVA, a Florida resident, DENISE OTERO VILARINO, a Florida resident,<br>        Plaintiffs/Appellees,<br>v. | Case no.: 1:20-cv-23183-MGC |
| UBS FINANCIAL SERVICES INC., a foreign corporation and UBS Credit Corp., a foreign corporation,<br>        Defendants/Appellants.<br>_____/ | Adv. Proc. No.: 19-01047-LMI |
| In re:<br>LORENZO ESTEVA,<br>        Debtor.<br>_____/ | Bankr. case no.: 18-16645-LMI<br>Chapter 11 |

## <u>APPELLEES' ANSWER BRIEF</u>

AM LAW LLC
*Counsel for Appellee Lorenzo Esteva*
10743 SW 104th Street
Miami, FL 33176
PH: 305.441.9530
Email: pleadings@amlaw-miami.com
<u>/s/ Gary M. Murphree, Esq.</u>
Gary M. Murphree, Esq.
FBN 996475

THE FOODMAN FIRM
*Counsel for Appellee Denise Otero Vilarino*
3059 Grand Avenue, Suite 330
Miami, FL 33133
PH: 305.201.3663
Email: DF@FoodmanFirm.com
<u>/s/ Daniel Foodman, Esq.</u>
Daniel Foodman, Esq.
FBN 337160

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT…………………………………....iv

STATEMENT REGARDING ORAL ARGUMENT………………….…………v

TABLE OF AUTHORITIES………………...………………………………………vi

STATEMENT OF THE CASE……………………………………………………….3

A.    References………………………………………………………………...3

B.    Facts………………………………………………………………………...4
       1. Household Account and Client Relationship Agreement……………...... 4
       2. Advance Commission Promissory Notes……………...…………………5

C.    Procedural Posture……………………………...…………………………6

STANDARD OF REVIEW……………………………………….……………..8

SUMMARY OF ARGUMENT…………………………………………………...8

ARGUMENT……………………………………………………………………..10

I. THE CLIENT RELATIONSHIP AGREEMENT, AS SUGGESTED
BY ITS TITLE, GOVERNED ONLY THE HOUSEHOLD ACCOUNT
RELATIONSHIP BETWEEN THE PARTIES…………………………………..10

II. TURNOVER UNDER § 542 WAS PROPER BASED UPON UBS NOT
HAVING A SECURITY INTEREST IN THE JOINT HOUSE ACCOUNT….…17

III.    UBS' FRAUDULENT TRANSFER CLAIMS UNSUPPORTED
BY RECORD EVIDENCE………………………………………………….……17

A.    UBS Concedes No Actual Fraudulent Intent
       Under Florida Statute § 726.105(1)(a)………………………….…....….…..18

B.    UBS Failed To Produce Evidence to Support Its
      Constructive Fraudulent  Transfer Claims Under Fla.
      Stat. § 726.105(1)(b) and § 726.106……………………….………………19

IV. NO RIGHT TO SETOFF AGAINST THE HOUSE ACCOUNT  ..……........23

CONCLUSION………………………………………………………….....23

CERTIFICATE OF COMPLIANCE PURSUANT TO RULE 8015……………..24

CERTIFICATE OF SERVICE………………………………………...…………..24

## <u>Certificate of Interested Persons and Corporate Disclosure Statement</u>

Appellees Lorenzo Esteva, the Chapter 11 debtor below, and Denise Otero Vilarino, his spouse wife, through the undersigned counsel, certify that the Certificate of Interested Persons and Corporate Disclosure Statement in Appellants' Initial Brief is complete.

Respectfully submitted February 26, 2024.

<u>/s/ Gary M. Murphree</u>
Gary M. Murphree, Esq.
Florida Bar No.: 996475
*Counsel for Appellee Lorenzo Esteva*
AM Law LLC
10743 SW 104th Street
Miami, Florida 33176
Ph: 305-441-9530
Email: pleadings@amlaw-miami.com

## Statement Regarding Oral Argument

After careful consideration of the form Client Relationship Agreement, drafted by the Appellants and that it required each account holder to execute to open a UBS account, the bankruptcy court concluded that the form agreement was intended only to govern the account relationship between UBS and each account holder and was not intended and did not grant UBS a security interest in the UBS joint household account of Appellees Mr. Lorenzo Esteva and Ms. Denise Otero Vilarino to secure repayment of unrelated promissory notes due by Mr. Esteva to UBS. After considering the Client Relationship Agreement, the district court affirmed the bankruptcy court. Esteva and Otero do not believe an oral argument of an unambiguous contract is necessary but will be pleased to appear at an oral argument should this Court wish.

# TABLE OF AUTHORITIES

**Statutes**

11 U.S.C. § 341…………………………………………………………………..6

11 U.S.C. § 522…………………………………………………………………..6

11 U.S.C. § 542……………………………………………………………..…...17

Florida Statute § 726.105…………………………………………………..17,18,19

Florida Statute § 726.106…...…………………………………………………..19

**Bankruptcy Rules**

Rule 4003………………………………………………………………..…...…….6

**Cases**

*7 Wall Street Co. v. Franklin Natl. Bank,* 37 N.Y.2d 245, 249,
    371 N.Y.S.2d 915 (Ct. of Appeals 1975)………………...………………15

*Applehead Pictures LLC v. Perelman*, 80 A.D.3d 181, 193,
    913 N.Y.S.2d 165, 172 (1st Dept. 2010)……………………………………13

*Arciniaga v. General Motors Corp.*, 460 F.3d 231, 237 (2d Cir. 2006)………13, 16

*Aylett v. Secretary of Housing and Urban Development*,
    53 F.3d 1560, 1570 (10th Cir. 1995)………………………………………...21

*Beal Bank, SSB v. Almand and Assocs.*, 780 So.2d 45, 53 (Fla. 2001)……………23

*Broadcast Music, Inc. v. Evie's Tavern Ellenton, Inc.*,
    772 F.3d 1254, 1257 (11th Cir. 2014)………………………………..……8

*Chapman v. Al Transport*, 229 F.3d 1012, 1028 (11th Cir. 2000)…………………..20

*In re Gamble*, 168 F.3d 442, 444-45 (11th Cir. 1999)…………………..…………..…6

*Goldhirsch v. St. George Tower*, 142 A.D.3d 1044, 1047,
    37 N.Y.S.3d 616, 619 (2d Dept. 2016)…………………………………15

*Inland Bulk Transfer Co. v. Cummins Engine Co.*,
    332 F.3d 1007, 1010 (6th Cir. 2003)…………………………………16

*Kardash v. Comm'r of IRS*, 866 F.3d 1249, 1256 (11th Cir. 2017)……………8, 20

*Maglich v. Saxe, Bacon & Bolan, P.C.*,
    97 A.D.2d 19, 23, 468 N.Y.S.2d 618, 621 (1983)…………………………15

*Medina-Munoz v. R.J. Reynolds Tobacco Co.*,
    896 F.2d 5, 8 (1st Cir. 1990)……………………………………………21

*Mangiatordi v. Maher*, 293 A.D.2d 454, 455, 740 N.Y.S.2d 114, 115 (2002) ……15

*Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)……………..…....8

*In re Orexigen Therapeutics, Inc.*, 596 B.R. 9, 17 (Bankr. D. Del. 2018)…………23

*Quadrant Structured Prod. Co. v. Vertin*,
    `23 N.Y.3d 549, 560, 16 N.E.3d 1165, 1172 (2014)………………………..14

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000)………..21

*Reiss v. Financial Performance Corp.*, 97 N.Y.2d 195,
    764 N.E.2d 958 (Ct. of Appeals 2001)…………………….………………16

*Rentways, Inc. v. O'Neill Milk & Cream Co.*,
    308 N.Y. 342, 348, 126 N.E.2d 271, 273 (1955)……………………………14

*Schonfeld v. Thompson*, 243 A.D.2d 343,
    663 N.Y.S.2d 166 (1st Dept. 1997)…………………………………………13

*Smith v. IndyMac Fed. Bank, F.S.B.*,
    2010 Bankr. LEXIS 704 (Bankr. D.N.H. 2010)……………………………16

*In re Teltonics, Inc.*, 904 F.3d 1303, 1314 (11th Cir. 2018)………………………20

*U.S. v. Four Parcels of Real Property in Greene and Tuscaloosa*

*Counties in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991)...............21

*Vineberg v. Bissonnette*, 548 F.3d 50, 56 (1st Cir. 2008)………………..…....…8

*Von Steen v. Much*, 776 N.Y.S. 2d 170 (Sup. Ct. 2004)…………………..…15

*Wortley v. Bakst*, 844 F.3d 1313, 1320–21 (11th Cir. 2017)………………….2

*Wellness Int'l Network*, 575 U.S. 665, 673 (2015)…………………………….2

## JURISDICTIONAL STATEMENT AND WHETHER THE BANKRUPTCY COURT HAD THE JURISDICTION TO ENTER THE FINAL JUDGMENT UNDER TO 28 U.S.C. 157

The Court directed the parties to address whether the bankruptcy court was authorized to enter the final judgment under 28 U.S.C. § 157, a precondition to the jurisdiction of the Court under 28 U.S.C. § 158. The bankruptcy court has the authority to enter final judgment in core proceedings and in related to non-core proceedings with the parties' consent. The matters determined were core proceedings. The final judgment determined the following claims/counterclaims:

- Count One sought to determine that the Household Account was exempt as tenancy by the entire property under section 522 of the bankruptcy code. [Appellants' Appendix ("**App.**") pdf 33-34]. The determination of what constitutes exempt property is a core proceeding under § 157(b)(2)(B).

- Count Two sought to determine that UBS' asserted lien against the exempt Household Account to secure repayment of notes owed by Esteva was invalid. [*Id*. Pdf 34-36] The determination of the validity of a lien is a core proceeding under § 157(b)(2)(K).

- Count Three sought the turnover of the Household Account under § 542 of the bankruptcy code.[1][*Id*. Pdf 36] A turnover action is core proceedings under §

---

[1] The fourth count for unjust enrichment and objection to claim was not addressed in the final judgment and is not part of this appeal.

157(b)(2)(E).

- UBS's Counterclaim One sought to determine the validity of UBS's lien on the exempt Household Account. [*Id.* Pdf 131-32] The determination of the validity of a lien is a core proceeding under § 157(b)(2)(K).

- UBS' Counterclaim Two sought to avoid fraudulent transfers, i.e., that Esteva's note deposits in the exempt Household Account were avoidable transfers. A fraudulent transfer action is a core proceeding under § 157(b)(2)(H).

- UBS' Counterclaims Three and Four sought to set off Esteva's note obligations against the exempt Household Account under § 553(a). A setoff determination under § 553 of the bankruptcy code concerns the allowance or disallowance of a claim is a core proceeding under § 157(b)(2)(A), (B), and (O).

Even if one of the above counts were determined to be only a related to non-core proceeding, the bankruptcy court still had the authority to enter the final judgment based on the parties' consent. *See* 28 U.S.C. 157(c)(1)&(2)(a bankruptcy court "may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11 … with the consent of all the parties"); *Wortley v. Bakst*, 844 F.3d 1313, 1320–21 (11th Cir. 2017)(citing *Wellness Int'l Network*, 575 U.S. 665, 673 (2015)(describing that under § 157, a bankruptcy court may enter a final judgment in non-core proceeding if the parties consent). Consent can be express or implied. *Wellness Int'l*, 575 U.S. at 678.

The initial scheduling order required that UBS object to the entry of final judgment by the bankruptcy court on any non-core matter or be deemed to have waived such objection. [*Appellee's Appendix* Pdf 2, paragraph 1(b)] Appellants did not object. [App. Pdf 9-11, the adversary docket] Appellants answered and raised counterclaims without objecting to the bankruptcy court's authority to enter final judgment on the claims or counterclaims. [Record answer adversary complaint]  In short, the parties consented to the bankruptcy court's entry of the final judgment. Because the bankruptcy court had the authority to enter the final judgment, this Court has subject matter jurisdiction over this direct appeal under 28 U.S.C. § 158(d)(2).

## STATEMENT OF THE CASE

### A.  References

The following references are used in this brief:

(i)     "**App.**" means the reference to the Appellant's Appendix.

(ii)    "**Appellees**" means collectively Esteva and Otero.

(iii)   "**Brief**" means the reference to the Appellant's Opening Brief.

(iv)    "**Esteva**" means Appellee Lorenzo Esteva, the Chapter 11 debtor in the pending bankruptcy case below.

(v)     "**Household Account**" means the UBS investment account jointly opened by the Appellees.

(v)     "**Otero**" means Appellee Denise Otero Vilarino the wife of Esteva.

(vi)    "**Pdf**" means the pdf page site in the appendix.

3

(vi)    "**UBS**" or "**Appellants**" means UBS Financial Services, Inc. and UBS Credit Corp.

## A. Facts

Esteva and Otero were married in August 2007 and have two minor children and an adult daughter attending college.    [App. Pdf 441, *Esteva Affidavit* ¶ 3] Esteva is the sole wage earner of the family. [*Id.* Pdf 443, ¶ 18]  During the twenty-five years Esteva worked as a financial advisor for Merrill Lynch, Esteva and Otero saved about one-half million dollars in their Merrill Lynch joint investment account. [*Id.* Pdf 442, ¶ 7]  In November 2015, Esteva left Merrill Lynch to become a financial advisor in the International Division of the Miami office of UBS Financial Services, Inc.  [*Id.* ¶ 5]

### 1.  Household Account and Client Relationship Agreement

UBS policy requires that its financial advisors maintain their trading accounts exclusively with UBS. [*Id.* ¶ 12]  When Esteva went to work for UBS, Esteva and Otero opened the Household Account at the UBS Miami office. [*Id.* ¶ 6]  UBS required each account holder to execute the form Client Relationship Agreement drafted by UBS that governed the account holder and UBS's relationship with respect to each investment account. [*Id.* Pdf 54-82, *Client Relationship Agreement*]  Esteva and Otero transferred their one-half million dollars in life savings from their Merrill Lynch joint investment account into the UBS Household Account. [*Id.* 443 ¶ 7]

## 2. **Advance Commission Promissory Notes**

To avoid interrupting his commission earnings [*Id*. ¶ 8-9], UBS advanced commissions to Esteva through four promissory notes signed by Esteva and payable to UBS. [App. Pdf 138-70, copies of the four promissory notes; Pdf 442 ¶ 8-9]  Each time UBS funded a promissory note, with the knowledge and consent of UBS, Esteva deposited the note proceeds into the Household Account. [*Id.* Pdf 442 ¶ 11] Simultaneously with the execution of the promissory notes, UBS and Esteva entered into four Transition Payment Award Agreements ("**TPAAs**") purposed to repay the promissory notes from Esteva's anticipated future commissions. [*Id.* Pdf 409-40, copies of the TPAAs]  The anticipated future commissions earned by Esteva through the TPAAs essentially equaled the payments due under the promissory notes. [*Id.* 442 ¶ 9]

Otero did not guarantee the promissory notes; Otero did not execute a security agreement pledging collateral, including the Household Account, to secure repayment of the promissory notes. [*Id*. Pdf 442 ¶ 10]  On June 6, 2017, UBS terminated Esteva and placed a hold on the Household Account to secure repayment of the promissory notes owed by Esteva only to UBS.   [*Id.* Pdf 443 ¶ 13]  At the time UBS froze the Household Account, Esteva and Otero did not owe UBS for any charges, i.e., overdrafts, fees, or chargebacks, relating to the Household Account [*Id.* Pdf 443 ¶  14]

### B.  Procedural Posture

On May 31, 2018, Esteva filed a Chapter 7 petition, later converted to a Chapter 11 case. [*Id*. Pdf 29 ¶ 6]  On January 17, 2019, counsel for the United States Trustee Office concluded the § 341 meeting of creditors. [*Id*. Pdf 33 ¶ 28]  Esteva had scheduled the Household Account as exempt property as tenancy by the entirety pursuant to § 522, a form of property ownership recognized in the State of Florida that vests indivisible title in the married couple.   [*Id*.]  Neither the United States Trustee or UBS objected to the claimed exemption  [*Id*.], within thirty days of the conclusion of the § 341 meeting of creditors as required by Bankruptcy Rule 4003, and the Household Account was exempt by operation of law under § 522(i).  *See also In re Gamble*, 168 F.3d 442, 444-45 (11th Cir. 1999).

Otero and Esteva later commenced an adversary proceeding in the Chapter 11 case to (i) confirm the exempt status of the Household Account, (ii) determine that any security interests or liens granted by Esteva to UBS to secure repayment of the promissory notes did not attach to the exempt Household Account, (iii) direct UBS to turnover the exempt Household Account; and (iv) determine that UBS's proof of claim for indebtedness under the promissory notes, filed as secured was an unsecured claim only. [App. PDF 297-38]   UBS answered, raised affirmative defenses, and counterclaimed asserting that (i) it had a lien and setoff right against the Household Account and (ii) that Esteva's deposits of the note proceeds into the

House Account were actual or constructive fraudulent transfers. [App. Pdf 117-36] 713-32] Appellees filed a motion for partial summary judgment on the issues regarding whether UBS had a valid security interest in the Household Account to secure repayment of the promissory notes due by Esteva to UBS, and it was supported by an affidavit of Esteva.  [App. Pdf 304-26]  UBS filed a response in opposition to the motion for summary judgment. [App. Pdf 452-68]  Appellees filed a reply in support of summary judgment. [App. Pdf 502-11]   After a hearing on the competing motions, the bankruptcy court made a detailed oral ruling granting the motion for summary judgment in favor of Otero and Esteva, determining that the Client Relationship Agreement was not intended and did not grant UBS a security interest in the Household Account to secure repayment of the promissory notes owed by Esteva only, and granting their motion for summary judgment regarding the alleged fraudulent transfer claims. [App. Pdf 513-43, oral ruling]  The bankruptcy court entered partial final judgment in favor of Appellees and against UBS. [App. Pdf 548-49]

UBS appealed the partial final judgment to the district court. The district court entered the Order Affirming the Bankruptcy Court's Order Granting Partial Final Judgment in Favor of Plaintiffs/Appellees. [App. Pdf 1093-100]

UBS timely appealed the district court's order affirming to this Court. The parties fully briefed the substantive issues, but the Court dismissed the initial appeal

for lack of subject matter jurisdiction. [App. Pdf 1138-1152]  The bankruptcy court entered the order certifying the determination of no just reason for delay under Federal Rule of Civil Procedure 54(b).  [App. Pdf 1170-72]. The Court granted the parties joint request that the Court hear this appeal directly. [ECF # 8]

## STANDARD OF REVIEW

The Bankruptcy Court's order granting summary judgment is reviewed *de novo*. *Broadcast Music, Inc. v. Evie's Tavern Ellenton, Inc.*, 772 F.3d 1254, 1257 (11th Cir. 2014). While generally all reasonable inferences are drawn in favor of the non-moving party on summary judgment, "[o]n issues where the nonmovant bears the ultimate burden of proof, [she] must present definite, competent evidence to rebut the motion. *Vineberg v. Bissonnette*, 548 F.3d 50, 56 (1st Cir. 2008) *citing Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991). UBS had the ultimate burden of proof on each element of its alleged fraudulent transfer claims. *See Kardash v. Comm'r of I.R.S.*, 866 F.3d 1249, 1256 (11th Cir. 2017) (a claimant must show either that the debtor was insolvent at the time of the transfer or became insolvent as the result of the transfer).

## SUMMARY OF ARGUMENT

The bankruptcy court, affirmed by the district court, properly determined that the rather obvious purpose of the Client Relationship Agreement, a form drafted by UBS that it required every prospective account holder to execute, was limited to

governing the parties' relationship regarding the Household Account. The bankruptcy court rejected the argument of UBS that the Client Relationship Agreement had to be interpreted and integrated with the unrelated and separate promissory notes, particularly given that the clear intent of both UBS and Esteva that the promissory notes were to be repaid through future commissions under the TPAAs.

The Client Relationship Agreement doesn't reference the four promissory notes made by Esteva. Therefore, it makes little sense to use ambiguous language from that agreement to modify the terms of the notes to include either a guarantee of repayment by Otero or her pledge of the Household Account to secure her guarantee. Otero neither signed nor guaranteed the promissory notes nor did she have any specific knowledge about them. As a highly sophisticated financial services company, UBS certainly possessed the necessary expertise to properly evidence both, but it chose not to do so. UBS now asks this Court to rewrite the terms of the agreements that UBS authored to obtain a result not bargained for. We submit that this Court, like the previous bankruptcy court and district court, will not use its exceptionally limited interpretive pen to wholesale rewrite agreements of the parties, particularly agreements written by a highly sophisticated financial services company.

UBS' final attempt to avoid the consequences of omitting Otero's guarantee from the notes was to plead fraudulent transfers, i.e., Esteva's deposits into the exempt Household Account were actual or constructively fraudulent. UBS waived its actual fraudulent transfer argument before the bankruptcy court.[2] The remaining constructive fraudulent transfer claims depend on a showing by UBS that Esteva was or became insolvent. In the earlier appeal, this Court observed, "we see precious little in this record that would allow us to find *that Esteva is insolvent*." [App. Pdf 1146] The Court may have understated the lack of evidence because the record is devoid of financial or other evidence to show Esteva was insolvent or became insolvent as a result of the deposits into the Household Account. For the reasons stated, the final judgment should be affirmed in all respects.

## ARGUMENT

### I.    THE CLIENT RELATIONSHIP AGREEMENT, AS SUGGESTED BY THE TITLE, GOVERNED ONLY THE HOUSEHOLD ACCOUNT RELATIONSHIP BETWEEN

---

[2] The bankruptcy court's ruling on the actual fraud issue is as follows:

However, *at the hearing counsel for UBS conceded that there was no basis for me to find that the house account was created with actual fraudulent intent.* This concession is consistent with the undisputed facts that show that the debtor transferred the money to the house account with the express authority of UBS. Mr. Esteva and his wife transferred $500,000 from a trading account at Mr. Esteva's former employer, to the house account, which was the trading account which was a trading account at UBS. There's absolutely no basis to find that the creation of the house account, which was contemplated, if not required under the promissory notes, or the transfer of the proceeds of the promissory notes to the house account, to which transfer UBS consented, was done with actual intent to defraud anyone.
[App. Pdf 830, l. 8-25]

## THE PARTIES

The Household Account was exempt as tenancy by the entirety from any debt owed only by either Otero or Esteva, including the debts only Esteva owed UBS under the promissory notes, with the only exception being charges relating to the use of the Household Account. UBS did not timely or otherwise challenge this determination; this issue is not before the Court.

The bankruptcy court and the district court determined that the Client Relationship Agreement, signed by each UBS client who wishes to open a UBS investment account, governed only the account holder and UBS' relationship concerning the investment account. UBS disregards the determinations of the bankruptcy court and district court and the very title of the Client Relationship Agreement, which so indicates it is limited to the Household Account, to now argue before this Court that the Client Relationship Agreement granted UBS a security interest by Otero in the Household Account to secure the wholly unrelated promissory notes owed by Esteva only. Specifically, the Client Relationship Agreement provided that:

> Known as the Client Relationship Agreement, this documents outlines the terms and conditions of your relationship with us. ***By maintaining your Accounts at UBS, you agree to these terms and conditions and the other agreements and disclosures we refer to here***…Please note: this Client Relationship Agreement applies to all of your Accounts at UBS, including any Accounts you may already have with us and Accounts you may open in the future.

[App. Pdf 60]   You" is defined as "'You,' 'your,' and 'yours' refer to you *as a client* of UBS.   [App. Pdf 60 (emphasis added)]

After thorough consideration, the bankruptcy court concluded, "[n]owhere in the C.R.A. does Ms. Otero agree to become liable on the promissory notes. When the section is read in its entirety, ' you' and 'yours' refer to debts that either account holder has to UBS under the C.R.A. or a separate agreement. Still, not that either account holder automatically becomes liable for the other's debts under the separate agreement as I illustrated in my prior remarks." [App. Pdf 822 l. 8-16]  UBS contends that the bankruptcy court's interpretation of "you" is improbable. UBS turns the definition of "you" upside down to mean both Otero and Esteva "as *a client* of UBS." *Brief* p. 28   The Client Relationship Agreement defines "you as *a client* of UBS," not "you *as clients* of UBS." UBS  could have, but did not, define "you" to "include each signatory or account holder." Elsewhere, the C.R.A. clearly states, "[f]or joint accounts … *the account holders are **jointly and severally liable for all obligations with respect to the Account***." [App. Pdf 68 (emphasis added)]   A clear-eyed reading of the Client Relationship Agreement supports the conclusion of the bankruptcy court that Otero did not knowingly intend to grant UBS a security interest in the Household Account to secure repayment of the promissory notes, particularly when it does not reference these notes owed solely by Esteva.

New York law applicable to interpreting and integrating multiple contracts

12

supports this conclusion. Separate written contracts involving different parties, serving different purposes, and not referring to each other are not to be interpreted as interdependent or combined to form a unitary contract. *See Applehead Pictures LLC v. Perelman*, 80 A.D.3d 181, 193, 913 N.Y.S.2d 165, 172 (1st Dept. 2010)(*citing Schonfeld v. Thompson*, 243 A.D.2d 343, 663 N.Y.S.2d 166 (1st Dept. 1997). In *Arciniaga v. General Motors Corp.*, 460 F.3d 231, 237 (2d Cir. 2006)(interpreting New York law), the Second Circuit Court of Appeals established a four-part test to determine when to read multiple agreements as an integrated, single agreement: (i) whether the parties to the agreements are the same; (ii) whether the agreements are mutually dependent; (iii) whether the agreements are separate forms and do not refer to each other; and (iv) whether the agreements serve separate purposes.

Here, the Client Relationship Agreement, the promissory notes, and the TPAAs are separate distinct agreements. The parties to the Client Relationship Agreement are Otero, Esteva, and UBS, while only Esteva and UBS are parties to the promissory notes and the TPAAs. The Client Relationship Agreement and the promissory notes do not reference one another. The obvious purpose of the Client Relationship Agreement is to govern the relationship of the parties with respect to the UBS investment account. This is unrelated to the purpose of the promissory notes to evidence Esteva's debt to UBS. UBS required Esteva and Otero to open the Household Account as per its policy that advisors' investment accounts must be

maintained exclusively at UBS.

UBS could have made Otero an obligor under the promissory notes. UBS could have made Otero guarantee the promissory notes. UBS omission to do either itself is construed that it did not intend to have Otero obligated under the promissory notes. *Quadrant Structured Prod. Co. v. Vertin*, 23 N.Y.3d 549, 560, 16 N.E.3d 1165, 1172 (2014)(concluding that if parties to a contract omit terms—particularly, terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission*); see also* In re Ore Cargo, Inc., 544 F.2d 80, 82 (2d Cir. 1976)(applying New York law)(applying the maxim, *expressio unius est exclusio alterius*, a sophisticated commercial lender's omission of a specific reference to tort claims precluded implying those claims were transferred to the lender under the security agreement).

UBS attempts to remedy its fatal omission of Otero's guarantee from the promissory notes through an improbable expansive interpretation of the unrelated Client Relationship Agreement. Under New York law, as the creator of the Client Relationship Agreement, UBS is prohibited from interpreting ambiguity in the agreement to its favor or advantage. *See Rentways, Inc. v. O'Neill Milk & Cream Co.*, 308 N.Y. 342, 348, 126 N.E.2d 271, 273 (1955)(militating against plaintiff's interpretation is the equally well-settled maxim that, where there is ambiguity in the terms of a contract prepared by one of the parties, "it is consistent with both reason

14

and justice that any fair doubt as to the meaning of its own words should be resolved against' such party")(citations omitted); *see also See Von Steen v. Much*, 776 N.Y.S. 2d 170 (Sup. Ct. 2004)(when the Court is presented with a standard form contract, if there is any doubt as to the meaning of the agreement, the doubt must be resolved against the drafter); *Goldhirsch v. St. George Tower*, 142 A.D.3d 1044, 1047, 37 N.Y.S.3d 616, 619 (2d Dept. 2016)("[I]n cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it and favorably to a party who had no voice in the selection of its language")(*citing 7 Wall Street Co. v. Franklin Natl. Bank,* 37 N.Y.2d 245, 249, 371 N.Y.S.2d 915 (Ct. of Appeals 1975).

UBS' contention that Otero knowingly obligated herself as guarantor of the promissory notes indirectly through the Client Relationship Agreement is based on an expansive interpretation of the, at best, ambiguous language in that agreement. But as its drafter, New York law clearly prohibits it from using ambiguous language offensively against Otero.

The ambiguous language of the Client Relationship Agreement in no event may be used to cure UBS's omission of Otero's guarantee from the promissory notes. *See Mangiatordi v. Maher*, 293 A.D.2d 454, 455, 740 N.Y.S.2d 114, 115 (2002)(finding that a pending action involving a business dispute is not a basis for denial of the plaintiff's unrelated, independent cause of action)(citing *Maglich v. Saxe, Bacon & Bolan, P.C.*, 97 A.D.2d 19, 23, 468 N.Y.S.2d 618, 621

(1983)(holding that defendant's unrelated claim legal services could not be off-set against the debt under an unrelated note in that any such proof would be inadmissible under the parol evidence rule to vary the plain terms of the letter agreements)).

UBS cases are readily distinguishable. The case *of Smith v. IndyMac Fed. Bank, F.S.B.*, 2010 Bankr. LEXIS 704 (Bankr. D.N.H. 2010), which involved a person securing a mortgage note by executing an underlying mortgage, is not inconsistent with *Arciniaga*, 460 F.3d at 237. A mortgage and mortgage note are expressly connected by reference and serve the same purpose - to secure the repayment of the mortgage note by the mortgaged property. Similarly, *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1010 (6th Cir. 2003) is readily distinguishable in that both versions of the alleged agreement incorporated by express reference the general terms and conditions of the related attachment.

Another flaw in UBS' insistence that Otero intended to grant UBS a security interest in the Household Account is that if UBS had really intended to have the Household Account as collateral at the time it drafted the promissory notes it could have made her guaranty the indebtedness and pledge her interest in the Household Account as collateral for the repayment of the promissory notes. *See Reiss v. Financial Performance Corp.*, 97 N.Y.2d 195, 764 N.E.2d 958 (Ct. of Appeals 2001)("this Court will not imply a term where the circumstances surrounding the formation of the contract indicate that the parties, when the contract was made, must

have foreseen the contingency at issue and the agreement can be enforced according to its terms.").

The bankruptcy court recognized the independence of the agreements and found, "it would appear, and indeed the promissory notes and accompanying Transition Payment Award Agreement reflect that the C.R.A. was not considered the operative document to create or grant a security interest in the house account. Similarly, the bankruptcy court refused to incorporate a guarantee of Otero into the promissory notes that UBS had omitted based on ambiguous language in the Client Relationship Agreement.

## II. TURNOVER UNDER § 542 PROPER BASED UPON UBS NOT HAVING A SECURITY INTEREST IN THE HOUSEHOLD ACCOUNT

UBS's argument against the turnover count under § 542 admittedly assumes "as explained in Point 1 above, UBS is a secured creditor with a perfected interest in the House Account". *See Brief* p. 39. Appellees will not further address this issue and shall rely on the bankruptcy court's determination that UBS did not have a valid security interest in the Household Account as amply supported above.

## III.   UBS' FRAUDULENT TRANSFER CLAIMS UNSUPPORTED BY RECORD EVIDENCE

A fraudulent transfer made with actual intent to defraud a creditor is avoidable under Florida Statute § 726.105(1)(a). UBS conceded this claim at the hearing before the bankruptcy court.

## A.    UBS Concedes No Actual Fraudulent Intent Under Florida Statute § 726.105(1)(a)

The bankruptcy court noted that "at the hearing counsel for UBS *conceded that there was no basis for me to find that the house account was created with actual fraudulent intent*. This concession is consistent with the undisputed facts that show the debtor transferred the money to the house account with the express authority of UBS. There's absolutely no basis to find that the creation of the house account, which was contemplated, if not required under the promissory notes, or the transfer of the proceeds of the promissory to the house account, to which transfer UBS consented, was done with actual intent to defraud anyone." [App. Pdf 830: 7-25] Further, counsel for UBS did not dispute this important concession at the end of the bankruptcy court's oral ruling. When asked whether he had any questions regarding the oral ruling, he responded, "[n]one." [App. Pdf 839:21-23] In any event, UBS has not filed the transcript of the hearing wherein UBS made the concession and thus cannot challenge the bankruptcy court's recollection of the earlier concession from the initial hearing. *In re Loop 76, L.L.C.*, 465 B.R. 525 (9th Cir. B.A.P. 2012) (to show clear error appellant challenging the bankruptcy court's findings had to show how the findings were not supported by the entire record). Therefore, UBS' argument that depositing the note proceeds into the Household Account were made with actual fraudulent intent, and its analysis of the badges of fraud to prove such intent is contrary to its earlier concession and remains unsupported by any record evidence.

UBS' brief, unfortunately, merges its fraudulent transfer claim based upon actual fraudulent intent under § 727.105(1)(a) ("transfer made … with actual intent to … defraud") with its constructive fraudulent transfer argument under § 727.105(1)(b)("transfer made … without receiving reasonably equivalent value.").

### B.    UBS Failed To Produce Evidence to Support Its Constructive Fraudulent Transfer Claims Under Fla. Stat. § 726.105(1)(b) and § 726.106

Florida Statute provides two constructive fraudulent transfer models. First,

*Florida Statute § 726.105(1)(a)* provides:

(1)   A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(a) ….
or
(b)   Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
1.   Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
2.   Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Second, *Florida Statute § 726.106* provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and ***the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation***.

UBS, the plaintiff in its fraudulent transfer claim, had to show Esteva was insolvent or was unable to pay his debts as they came due. *In re Teltonics, Inc.*, 904 F.3d 1303, 1314 (11th Cir. 2018)(*citing Kardash*, 866 F.3d at 1256)("In order to establish the insolvency element of constructive fraud under [Florida fraudulent conveyance law], a claimant must show either that the debtor was insolvent at the time of the transfer or became insolvent as the result of the transfer."). In the earlier appeal, this Court observed, "we see precious little in this record that would allow us to find **that Esteva is insolvent**."  [App. Pdf 1146]

This Court may examine the record evidence only before the trial court at the time the motion for summary judgment is heard. *Chapman v. Al Transport*, 229 F.3d 1012, 1028 (11th Cir. 2000).   By way of example, as in the *Teltonics* case, a plaintiff may meet its burden of proof on insolvency through testimony and the introduction of an expert report of a qualified financial witness opining that the debtor was insolvent at the time of the alleged transfer backed up by a thorough analysis of the debtor's financial condition.   *See Tectonics*, 904 F.3d 1306-07 (at trial, the parties called competing experts as to Teltronics' solvency at the time of the transfers). Here, UBS failed to submit any financial expert or any analysis at all regarding Esteva's alleged insolvency.

While generally all reasonable inferences are drawn in favor of the non-moving party on summary judgment, "[o]n issues where the nonmovant bears the

ultimate burden of proof, [she] must present definite, competent evidence to rebut the motion. *Vineberg*, 548 F.3d at 56. ("These showings may not rest upon 'conclusory allegations, improbable inferences, and unsupported speculation" *Id*. citing *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). *See also U.S. v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991)(When the nonmoving party has the burden of proof at trial, the moving party may support its motion with affirmative evidence showing the nonmoving party will be unable to prove its case at trial, and if the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the moving party is entitled to summary judgment). An inferred factual conclusion is reasonable "only when, and to the extent that, human experience indicates a probability that certain consequences can and do follow" after a consideration of the relevant evidence, both direct and circumstantial. *See Aylett v. Secretary of Housing and Urban Development*, 53 F.3d 1560, 1570 (10th Cir. 1995); *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000)(on summary judgment "the court should review all of the evidence in the record drawing "all reasonable inferences in favor of nonmoving party").  Lacking probative evidence, there was no evidentiary basis from which to infer Esteva's insolvency.

Here, UBS did not seek to introduce any affidavits, reports, or financial

analysis, whether by an expert or otherwise [*see generally* A. 445-460 UBS' response in opposition to Esteva and Otero's motion for summary judgment on the constructive fraudulent transfer claims, there is simply no record evidence whatsoever], to show Mr. Esteva was insolvent or was unable to pay his debts as they came due at the time of the transfers.   Based upon this record, the bankruptcy court found that "UBS failed to cite ***any evidence*** in support of its documents in support of its response that would create a material issue of disputed fact that Mr. Esteva was not otherwise paying his debts as they came due, or that the transfer in any way caused Mr. Esteva to become insolvent [at the time of the deposits]." [A: 828:1-6]   Most tellingly, UBS in its forty-four-page brief again fails to cite to any record evidence that would tend to show the bankruptcy court committed clear error in finding that UBS failed to show that Esteva was insolvent or not paying his bills as they came due. *Brief* p. 39-50.

Although not necessary, given it was UBS' burden of proof, what did the undisputed record evidence show? UBS structured the TPAAs to repay the notes through future commissions and not from the funds in the Household Account. [A: 413-36] Esteva and UBS anticipated future commissions earned under the TPAAs would repay the notes.   The undisputed record evidence proved that Esteva was able to pay his bills as they came due for more than a year and a half after depositing the note proceeds into the Household Account. The bankruptcy court properly granted

summary judgment against UBS on each of its fraudulent transfer claims based upon a record devoid of any probative evidence to support those claims.

## IV. NO RIGHT TO SETOFF AGAINST THE HOUSEHOLD ACCOUNT

Section 553 does not create setoff rights but only acknowledges that if there is a right to setoff under applicable state law, it may also be enforceable in bankruptcy. Accordingly, § 553 does not move the needle in favor of UBS. In fact, because the notes are due to UBS's affiliate and not to UBS, this type of triangular setoff would be prohibited under § 553. *See In re Orexigen Therapeutics, Inc.*, 596 B.R. 9, 17 (Bankr. D. Del. 2018)(mutuality requires that the debts are due to and from the same persons). The Florida Supreme Court has consistently held that a creditor of a single spouse does not have a right of setoff against a tenancy by the entirety bank account. *See Beal Bank, S.S.B. v. Almand and Assocs.*, 780 So.2d 45, 53 (Fla. 2001). Without a lien on the Household Account, UBS did not have a right of setoff against the account to secure repayment of the notes.

## CONCLUSION

For the reasons stated above, the district court's affirmance of the bankruptcy court granting partial summary judgment in favor of the Appellees should be affirmed in all respects.

**CERTIFICATE OF COMPLIANCE PURSUANT TO RULE 8015**

The undersigned certifies that the word count in this brief is approximately 5,629.

AM LAW
*Counsel for Plaintiff Esteva*
10743 SW 104th Steet
Miami, FL 33173
PH: 305.441.9530
Email: gmm@amlaw-miami.com
*/s/ Gary M. Murphree*
Gary M. Murphree, Esq.
FBN 996475

THE FOODMAN FIRM
*Counsel for Plaintiff Otero*
3059 Grand Avenue, Ste. 330
Miami, FL 33133
PH: 305.201.3663
Email: DF@FoodmanFirm.com
*/s/ Daniel Foodman*
Daniel Foodman, Esq.
FBN 337160

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 26, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel or parties of record via electronic filing notice generated by CM/ECF to counsel of record.

*/s/ Gary M. Murphree*
Gary M. Murphree